IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2010

**DANIEL BUCK v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Robertson County**
**No. 04-0249      John H. Gasaway, III, Judge**

_____

**No. M2010-00174-CCA-R3-PC - Filed January 21, 2011**

_____

Following a jury trial, the Petitioner, Daniel Buck, was convicted of aggravated rape, a Class A felony, and aggravated sexual battery, a Class B felony. See Tenn. Code Ann. §§ 39-13-502(b), -504(b). This Court affirmed his convictions on direct appeal. See State v. Daniel Buck, No. M2005-02818-CCA-R3-CD, 2006 WL 3831390 (Tenn. Crim. App., Nashville, Dec. 12, 2006), perm. to appeal denied, (Tenn. Apr. 23, 2007). The Petitioner filed a timely petition for post-conviction relief, claiming that his trial counsel was ineffective for failing to preserve the issue that his convictions were barred by the statute of limitations. The post-conviction court denied relief, and this appeal followed. After our review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Daniel Buck.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; John W. Carney, District Attorney General; and Dent Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Following a jury trial in February 2005, the Petitioner was convicted of aggravated rape and aggravated sexual battery. In his direct appeal, this Court summarized the procedural events leading up to the Petitioner's convictions as follows:

The Robertson County grand jury issued a presentment in its April 1991 term charging the [Petitioner] with aggravated rape and aggravated sexual battery. The charges were based on conduct occurring on or about the 11th or 12th of January, 1991. Immediately after the alleged assault in January of 1991, but prior to the return of the April 1991 presentment, the [Petitioner] relocated to Michigan where he was charged with two sexual offenses against a minor. The [Petitioner] was in custody in Michigan at the time the Robertson County grand jury issued their presentment. Ultimately in 1992, the [Petitioner] pled guilty in Michigan on two counts of criminal sexual conduct in the third degree and received sentences of nine to fifteen years in the Michigan penitentiary.

On April 11, 1991, a representative of the district attorney general's office of Robertson County notified the Robertson County sheriff's department that the [Petitioner] was located in Michigan and that extradition would be authorized. On December 6, 1991, extradition was initiated via the Michigan governor's office. However, the [Petitioner] refused voluntary extradition.

In 1991, 1992 and part of 1993, correspondence was exchanged between officials of the two states. A Tennessee fugitive warrant originally issued against [Petitioner] was dismissed by Tennessee officials for lack of action. In February 1993, an agent of the Robertson County District Attorney's office corresponded with a Michigan appellate defender's office member informing them of the [Petitioner]'s outstanding charges and an unserved capias for those charges.

May 1993 documents indicate that [the Petitioner] asked Michigan penitentiary officials about his Tennessee charges. [The Petitioner] specifically inquired whether the Michigan officials had exchanged correspondence with Tennessee officials concerning those charges and whether a detainer had been received by Michigan.

On July 9, 1993, Michigan Department of Corrections employee, Mary Hunt, wrote to an official in the Robertson County Sheriff's Department concerning the [Petitioner]. In this correspondence, Ms. Hunt explained that [the Petitioner] was incarcerated in a Michigan facility and that she had spoken with him about the charges. She also indicated she had provided to [the Petitioner] a copy of the "letter and warrant" that had originated in Robertson County. Ms. Hunt said [the Petitioner] indicated to her he did not wish to request a speedy disposition of the charges against him in Tennessee. Ms.

Hunt concluded in her correspondence "therefore, I am not enclosing Forms II and IV. I will await further action from you."

In June 1994, Michigan Department of Correction officials again corresponded with Robertson County Sheriff Department officials acknowledging receipt of the prior year's correspondence but informing Robertson County that no action had been taken to return [the Petitioner] to Tennessee to answer to the charges. In this 1994 correspondence, Michigan inquired into the current status of the Tennessee case. Robertson County Sheriff's officials responded that the charges were still pending but that similarly no action had been taken by state officials to return the [Petitioner] to face those charges. No further correspondence or related action occurred on the Robertson County charges until thirteen years later. After serving his sentence in its entirety in the Michigan penal system, the [Petitioner] was transported to Tennessee to answer to the Tennessee charges.

Upon [the Petitioner]'s return to Tennessee, it was determined that the 1991 presentment was defective as some or all of the grand jurors had failed to sign it. However, the victim, who had reached majority age, appeared before the Robertson County grand jury during its July 2004 term. The resulting superseding indictment replaced the earlier defective presentment.

State v. Daniel Buck, No. M2005-02818-CCA-R3-CD, 2006 WL 3831390, at *1-2 (Tenn. Crim. App., Nashville, Dec. 12, 2006), perm. to appeal denied, (Tenn. Apr. 23, 2007).

The only issue that the Petitioner raised in his direct appeal was that the trial court erred in denying his pre-trial "motion to dismiss based on a violation of his right to a speedy trial." Id. at *1. After this Court affirmed the Petitioner's convictions on direct appeal, see id. at *5, he filed a timely petition for post-conviction relief.

In a previous opinion, we discussed his petition for post-conviction relief and summarized the pertinent facts as follows:

On May 2, 2007, Petitioner filed a Petition for Post-conviction Relief. In his petition, Petitioner argued two pertinent issues for purposes of post-conviction relief: (1) that he was afforded ineffective assistance of counsel because trial counsel failed to file a motion for new trial to preserve his issue that his convictions were barred by the statute of limitations; and (2) that appellate counsel was ineffective because he did not raise the issue of the statute of limitations on appeal through plain error. On June 28, 2007, the trial

-3-

court appointed post-conviction counsel for Petitioner. On July 23, 2007, new counsel was appointed. On July 25, 2007, the trial court filed an order allowing for substitution of counsel who represented Petitioner at the post-conviction hearing. An amended petition was not filed prior to the hearing.

On January 11, 2008, the post-conviction court held a hearing. At the hearing, the State argued that Petitioner's issues either did not make a factual allegation or had been pre-determined. There was some discussion by the post-conviction court and the attorneys concerning what issues were viable. Petitioner's attorney stated that the only possible argument was regarding the statute of limitations. Petitioner's attorney admitted that he had no new evidence to present regarding the statute of limitations issue. At this point, the trial court stated that all issues were either waived or previously determined. Petitioner's attorney agreed with the assessment. The post-conviction court concluded the hearing by denying the petition.

Daniel E. Buck v. State, No. M2008-00283-CCA-R3-PC, 2009 WL 1605605, at *1-2 (Tenn. Crim. App., Nashville, June 9, 2009). We found that the Petitioner's statute of limitations issue had not been previously determined, and reversed and remanded to the post-conviction court so that the Petitioner could have a full hearing on the issue. Id. at *4. However, this Court noted that we made "no determinations as to the viability of the Petitioner's statute of limitations issue." Id.

On January 8, 2010, the post-conviction court held another hearing regarding the Petitioner's petition. The Petitioner testified that he moved from Tennessee to Michigan in February 1991. He said that he first became aware of the original Tennessee presentment when Michigan arrested him on a "fugitive warrant." He recalled that he went to three hearings regarding the warrant but that, on July 7, 1991, the warrant was dismissed "because Tennessee didn't do anything."

The Petitioner stated that, about four months later, he was arrested in Michigan on separate charges. He said that, after he was tried and found guilty, he spent twelve years and "about seven months" in a Michigan prison. The Petitioner recalled that, in 1993, he found out that the Tennessee "warrant was still alive and active" because it was listed in his presentence report. He acknowledged that he did not demand a speedy trial or waive extradition. The Petitioner said that he completed his sentence in Michigan on April 20, 2004, and on April 25, 2004, he was sent to Tennessee.

The Petitioner testified that he did not want the statute of limitations issue abandoned in his direct appeal and that he never told his trial counsel or appellate counsel[1] not to pursue the issue. The Petitioner recalled that he never met with either his trial counsel or appellate counsel after his trial to discuss what issues would be included in his motion for new trial. He said that he sent his appellate counsel a letter by certified mail, asking him, "[W]hy haven't you included the statute of limitation motion in my appeal?"[2] The Petitioner testified that his appellate counsel never responded.

The State presented the testimony of the Petitioner's trial counsel ("Trial Counsel"), who testified that he had been a criminal defense attorney for over twenty years. He recalled that the original 1991 presentment charging the Petitioner had not been signed by all members of the grand jury. Trial Counsel stated that he filed a motion to dismiss and explained that he argued that, because the 1991 presentment was defective, it "should be treated like it didn't exist," and that the superceding indictment, filed in 2004, was barred by the statute of limitations. However, at the post-conviction hearing, Trial Counsel said, "I think a reasonable argument could be made either way."

Trial Counsel testified that he never had any discussion with the Petitioner about waiving the statute of limitations issue on appeal. He testified that another attorney in his office handled the Petitioner's direct appeal and that he "turned over the file to him along with instructions." Regarding the statute of limitations issue, he commented, "I instructed [Appellate Counsel] that in my opinion that issue was meritless." Trial Counsel acknowledged that, in the past, he had included issues that could be argued either way in a client's appeal. When asked why he did not think the issue should have been included in the Petitioner's appeal, Trial Counsel testified,

> Because both due to the savings statute, but in any event during the statute this Defendant was clearly and unmistakably not residing present in the state of Tennessee but six months of the time from the offense being committed until the superceding indictment was returned. The State had three-and-a-half years left to go to file another indictment if they had to. It seemed so meritless as to not warrant taking it further.

---

[1] "Appellate counsel" refers to the Petitioner's counsel on direct appeal, who was not called to testify during the post-conviction hearing.

[2] A copy of the letter, dated June 12, 2006, that the Petitioner allegedly sent, along with a copy of United States Postal Service certified mail return receipt, was entered as an exhibit at the hearing and included in the record on appeal.

However, Trial Counsel admitted that he did not research the issue of whether the fact that the Petitioner was incarcerated and could not return to Tennessee had any affect on the tolling of the statute of limitations.

Trial Counsel said that he felt the most important issue to include in the Petitioner's motion for new trial was that his right to a speedy trial was violated. He elaborated, "Speedy trial was the most important one, because the State played chicken with this Defendant, deliberately decided not to file under the interstate agreement on detainers to force him to come to Tennessee." He later commented that he thought the Petitioner had a valid argument regarding his right to a speedy trial, but "for statute of limitation it appeared to be black letter law" and that he did not see "any reasonable prospect" of the pertinent statutes being changed.

The post-conviction court stated that the statute of limitations issue should have been argued on appeal but denied post-conviction relief because the Petitioner failed to show that he was prejudiced by his trial counsel's failure to preserve the issue for appeal.

## Analysis
### I. Failure to Raise Statute of Limitations Issue in Petitioner's Direct Appeal

The Petitioner contends that his trial counsel[3] was ineffective because, on appeal, he did not raise the issue that the Petitioner's aggravated sexual battery charge was barred by the statute of limitations.

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

---

[3] The Petitioner alleges that his "trial counsel" was ineffective for failing to raise issues in his direct appeal. However, as Trial Counsel testified, another attorney in his office handled the Petitioner's direct appeal. The Petitioner's motion for new trial is not included in the record, nor is it clear which attorney filed it. Thus, we will refer to "trial counsel," as the Petitioner does.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

It is counsel's responsibility to determine the issues to present on appeal. State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986). This responsibility addresses itself to the professional judgment and sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995). There is no constitutional requirement that every conceivable issue be raised on appeal. Campbell v. State, 904 S.W.2d 594, 597 (Tenn. 1995). The determination of which issues to raise is a tactical or strategic choice. Id.

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

The principles are the same when determining the effectiveness of both trial and appellate counsel. Campbell, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel was objectively deficient in failing to raise a particular issue on appeal, and (2) absent appellate counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful before the state's highest court. See, e.g., Smith v. Robbins, 528 U.S. 259, 285 (2000). Therefore, when "a claim of ineffective assistance of counsel is based on the failure to raise a particular issue . . . then the reviewing court must determine the merits of the issue." Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004). Our supreme court has explained that "if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal." Id.

Prosecution for aggravated sexual battery, a Class B felony, see Tennessee Code Annotated section 39-13-504(b) (1991), must begin within eight years of the time of the offense, see Tennessee Code Annotated section 40-2-101(b)(2) (1990). However, "[p]rosecutions for any offense committed against a child that constitutes a criminal offense under the provisions of . . . §§ 39-13-502—39-13-505 . . . shall commence no later than the date the child attains the age of majority or within four (4) years next after the commission of the offense, whichever occurs later." Tenn. Code Ann. § 40-2-101(d) (1990).[4]

At the time of the Petitioner's offense, Tennessee Code Annotated section 40-2-104 stated as follows:

> *A prosecution is commenced,* within the meaning of this chapter, *by finding an indictment or presentment*, the issuing of a warrant, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance in person or through counsel in general sessions or any

---

[4] The record indicates that the victim was eleven years old in January 1991.

municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense.

Tenn. Code Ann. § 40-2-104 (1990) (emphasis added). "It is the 'prosecution' which must be commenced with [the limitations period], not the finding of the indictment." Hickey v. State, 174 S.W. 269, 270 (Tenn. 1915). "So long as the prosecution begins within the prescribed limitations period, a subsequent indictment may issue despite any delay." State v. Lawson, 291 S.W.3d 864, 871 (Tenn. 2009). Our supreme court has stated "that a second or superceding indictment filed beyond the statute of limitations is proper so long as the first indictment was pending and the charges are neither broadened nor substantially amended." Id. at 872. Additionally, we note that Tennessee Code Annotated section 40-2-106 states as follows:

When an indictment or presentment is quashed, or the proceedings on the same are set aside, or reversed on writ of error, the time during the pendency of such indictment or presentment so quashed, set aside or reversed shall not be reckoned within the time limited by this chapter, so as to bar any new indictment or presentment for the same offense.

In the instant case, the offense for which the Petitioner was convicted occurred in January 1991. The prosecution was commenced in April 1991, well within the limitations period, when the grand jury returned the presentment. Michigan prison officials transferred the Petitioner to Tennessee on April 25, 2004, and sometime thereafter he contested the validity of the 1991 presentment because it was not signed by all of the grand jurors. In July 2004, when the first presentment was still pending, the grand jury returned a superceding indictment. After examining the relevant statutes and case law discussed above, it appears that there was not a reasonable probability that the Petitioner's appeal would have been successful because the State commenced prosecution within the limitations period and the superceding indictment was issued when the first presentment "was pending and the charges [were] neither broadened nor substantially amended." See Lawson, 291 S.W.3d at 872. Thus, we conclude that the Petitioner is not entitled to relief on this issue.

## II. Statute of Limitations Under Section 40-2-101(e)

The Petitioner also contends that the limitations period set forth in Tennessee Code Annotated section 40-2-101(e)[5] barred prosecution of both the aggravated rape and

---

[5] In his brief, the Petitioner quotes the current version of Tennessee Code Annotated section 40-2-101(e). We note that Tennessee Code Annotated section 40-2-101 has been amended several times since 1991 and that the current version of section 40-2-101(e) substantially reflects what was provided in the 1991

(continued...)

aggravated sexual battery charges. However, as we discussed above, the offenses were committed in January 1991 and the grand jury returned a presentment in April 1991, well within the limitations period. Moreover, the superceding indictment was properly issued in July 2004. Thus, the State commenced prosecution well within the limitations period stated in section 40-2-101(e). The Petitioner is not entitled to relief on this issue.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the denial of post-conviction relief.

_____
DAVID H. WELLES, JUDGE

---

[5](...continued)
version of section 40-2-101(d), specifically that prosecutions for some offenses, including aggravated rape and aggravated sexual battery, committed against a child "shall commence no later than the date the child attains the age of majority or within four (4) years next after the commission of the offense, whichever occurs later."